UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

              Plaintiff,

    vs.

MARZELL PATTERSON,

              Defendant.

_____/

Case No. 21-20585

HON. GEORGE CARAM STEEH

## OPINION AND ORDER DENYING DEFENDANT PATTERSON'S MOTION TO SUPPRESS (ECF No. 23)

This matter is before the court on defendant Marzell Patterson's motion to suppress evidence obtained during a search of his vehicle following a traffic stop (ECF No. 23). The parties appeared before the Court for an evidentiary hearing on the motion to suppress on June 9, 2022. For the reasons stated in this opinion and order, defendant Patterson's motion to suppress is DENIED.

## FACTS

On August 26, 2021 at 1:55 a.m., Officers Chad Rossow and Perry Teolis conducted a traffic stop in Warren, Michigan. Officer Rossow observed a 2014 Silver Chevy Malibu driving at a "high rate of speed." He followed the vehicle and determined it was travelling 55 miles per hour in a

40 mile per hour zone. Officer Rossow also noticed something hanging from the vehicle's rearview mirror, "causing a vision obstruction." Rossow activated his patrol lights and siren, and the Malibu turned, pulled to the side of the road, and came to a complete stop. Rossow observed the driver "making sudden movements around his body toward the rear seat." Before exiting the patrol vehicle, Rossow can be heard saying "he's moving around."

The two officers approached the Malibu with their flashlights illuminated. Defendant Patterson was in the driver's seat and was the vehicle's only occupant. Officer Rossow approached the driver side and Officer Teolis approached the passenger side of the vehicle.

Officer Rossow asked Patterson for his license, registration, and proof of insurance. Rossow also asked why Patterson was moving around so much and whether he had any weapons or drugs inside the vehicle. As this conversation was occurring, the officers were shining their flashlights inside the vehicle. Rossow's bodycam clearly shows a blanket covering the back seat bench of the vehicle.

Patterson promptly provided his license and was looking for the registration in the glovebox and center console. He was not able to locate the registration and asked Rossow if he could call his mother, who was the owner of the car. Both officers asked Patterson how much weed he had in

the car and Patterson said he did not have any weed. Officer Teolis, while shining his flashlight on the center console, declared that he saw a bag of weed in the center console, stating "I saw it. It was a bag. It's on my body camera. Don't lie, man. Don't lie."

While Patterson was making the phone call, Rossow asked him about a pill that he saw on the floorboard between the driver's seat and the door. Rossow used his flashlight to illuminate the pill and Patterson picked it up and handed it to Rossow. Patterson said it was not his and that it looked like Ibuprofen. Rossow asked if there were any other pills, drugs or weapons in the car and Patterson said no. Teolis then told Rossow to remove Patterson from the vehicle. As Rossow opened the driver's side door, he asked Patterson, "so you don't mind if we look, do you?" . . . "because obviously I see pills sitting around." Rossow then instructed Patterson to put down the phone and step out of the car. This first portion of the traffic stop lasted approximately two minutes.

Rossow handcuffed Patterson and escorted him toward the patrol car where he proceeded to pat Patterson down and evaluate his pupils. Meanwhile, the officers were gathering basic information from Patterson. Patterson said he was 22 years old and was driving home from his fraternity house and that he just got done working for Door Dash. The officers again asked whether Patterson had any weed and he admitted that

he previously lied to the officers and had a small amount of weed in the car.

The conversation proceeds as follows with Rossow asking Patterson if he

can search the car at least five times:

> Rossow: You got a bunch of weed in that car. So, you don't mind if I
>     look? You just got the bag?
>
> Patterson: I got a little.
>
> Rossow: You don't mind if I look? You already got pills laying on the
>     floor too.
>
> Patterson: That's not my pill.
>
> Teolis: We don't know that yet, okay? You're acting nervous. You're
>     moving around.
>
> Patterson: I feel like, I feel like y'all messing with me.
>
> Teolis: How are we messing with you, man?
>
> Patterson: You say I was going 55, I wasn't.
>
> Teolis: You were speeding.
>
> Rossow: Listen, I'm going be honest with you, the last thing I want to
>     do is pull someone over for doing nothing. That's not my job. I
>     have no problem with sitting around doing nothing until I get to
>     go home. The fact is, is that I got up behind you and I'm sure
>     you saw me.
>
> Patterson: Uh huh.
>
> Rossow: But I paced you probably about a half a mile. And I was
>     doing 70 to catch up with you, and I was pacing you at 55.
>
> Patterson: I guess the speedometer on my car is wrong.
>
>     . . . .

Rossow: So I'm going to ask you one more time, is there anything else in that car you need to tell me about?

Patterson: Like?

Rossow: Like weapons, drugs, pills.

Patterson: I got [inaudible].

Rossow: You got a gram of weed? Alright, so you won't mind if I take a look then? You got nothing to hide, right?

Patterson: Right, but you don't have to look there. I'm 22 … Weed's legal. I don't smoke it in the car.

Rossow: Ok. But I already have enough . . . I'm already seeing loose pills on the ground so I'm just asking you . . . . If that's an Ibuprofen and you got nothing but a gram of weed, weed's legal, right?

Patterson: Yes.

Rossow: So, you got nothing to worry about, right?

Patterson: Right, so I'm saying I . . . .

Rossow: So, you don't mind if I make sure, I take a look to make sure that there's nothing else in the car that you want to lie to me about?

Teolis: We just got to confirm that those pills are Ibuprofen.

Patterson: I don't know. I look at the pills. I thought it was Ibuprofen. I don't take pills.

Rossow: It looks like an Ibuprofen.

Patterson: That's what I'm saying, so I didn't even know it was in the back of the car.

[talking over each other]

- 5 -

> Rossow: You're ok, you're fine, alright. Alright, so if you don't mind,
> I'm going to go look in your car. If your only, if there's only a
> gram of weed in there, ok, all I'm going to do is run you in the
> system to make sure you ain't got no crazy warrants or nothing.
> I'm gonna let you go back home to your mom with her car, ok?
> Alright, is that cool? Alright.

(Bodycam Ex. B at 02:55-05:28; Bodycam Ex. C at 04:00-06:27). The interaction that took place between removing Patterson from his car and obtaining consent lasted approximately four minutes.

Officer Teolis put Patterson in the back seat of the patrol car and Officer Rossow searched the Malibu. Rossow pulled a blanket off the back seat and discovered a Diamondback .308 riffle with a loaded magazine inserted in the weapon. The pill returned as being prescription strength Ibuprofen. Patterson was ticketed for speeding and obstruction of view and was arrested for carrying a concealed weapon.

At the time, Patterson was just days away from his sentencing in Case No. 20-cr-20324, pending before this Court, having pleaded guilty to making a false statement to acquire a firearm under 18 U.S.C. § 922(a)(6). That conviction made him a felon. Patterson was indicted in the present case for being a felon in possession of a firearm under § 922(g)(1), with an enhanced penalty under § 3147 for having committed the crime while on pretrial release.

- 6 -

ANALYSIS

I.     Traffic Stop and Temporary Detention

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons . . . and effects against unreasonable searches and seizures." U.S. Const. amend. IV. "Temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' within the meaning of this provision." *Whren v. United States*, 517 U.S. 806, 809–10 (1986). Whether that seizure is reasonable, however, does not depend on "the actual motivations of the individual officers involved." *Id*. at 813. Rather, the reasonableness of the stop is contingent only upon whether "the police have probable cause to believe that a traffic violation has occurred." *Id*. at 810.

"[T]he Fourth Amendment tolerate[s] certain unrelated investigations that d[o] not lengthen the roadside detention" of traffic stops. *Id*. at 354 (citing *Arizona v. Johnson*, 555 U.S. 323, 327–28 (2009); *Illinois v. Caballes*, 543 U.S. 405, 406 (2005)). But "a traffic stop 'can become unlawful if it is prolonged beyond the time reasonably required to complete th[e] mission' of issuing a warning ticket." *Id*. at 354-55 (quoting *Caballes*, 543 U.S. at 408). In contrast, "measure[s] aimed at 'detect[ing] evidence of ordinary criminal wrongdoing[]'" lack "the same close connection to

- 7 -

roadway safety as the ordinary inquiries" and therefore are "not fairly characterized as part of the officer's traffic mission." *Id*. at 355–56 (citation omitted). A lawful traffic stop must therefore be limited in scope and duration. *Rodriguez v. United States*, 575 U.S. 348, 354 (2015). If an officer exceeds the scope or duration of the traffic stop, he must have "reasonable suspicion" to continue the stop on unrelated grounds. *Id*. at 354–55.

Officer Rossow's initial questioning of Patterson was within the scope of the traffic stop. The questions about marijuana and the pill all occurred while Patterson was retrieving his documents or while he was calling his mother for assistance in that regard. Therefore, these questions "d[id] not measurably extend the duration of the stop." *Rodriguez*, 575 U.S. at 355 (quoting *Johnson*, 555 U.S. at 333). These questions took place during the time "when tasks tied to the traffic infraction [were]—or reasonably should have been" ongoing. *See id*. at 354.

As the questioning of Patterson about the pill and marijuana escalated, the officers instructed him to exit the vehicle. Even if this act is "properly considered a safety measure, it is still a detour that requires independent reasonable suspicion because the request facilitated the investigation into [other matters] and did not pertain to the original traffic stop." *United States v. Whitley*, 34 F.3d 522 (6th Cir. 2022). The relevant inquiry is whether the totality of the circumstances supports a conclusion

that the officers had reasonable suspicion to believe that Patterson was engaged in illegal activity. In this case, within the scope of the traffic stop, Officer Teolis saw a bag of what looked like marijuana and Office Rossow saw a white pill on the floor behind the driver's seat. In addition, the officers saw Patterson reach into the backseat area as he was being pulled over, and knew he lied about not having any marijuana in the car. These circumstances, among others, gave the officers reasonable suspicion that criminal activity may be afoot, warranting the removal of Patterson from the vehicle. Defendant does not challenge the basis for the traffic stop or his temporary detention in this case.

The next series of events occurred after Patterson was removed from the car and handcuffed. At that time the officers attempted to obtain Patterson's permission to search the car for contraband. The government offers two bases to support their search of the vehicle: consent and probable cause.

II.    <u>Consent to Search</u>

Consent must be freely and voluntarily given and not the result of coercion. *United States v. Canipe*, 12 569 F.3d 597, 602 (6th Cir. 2009). The government bears the burden to show voluntariness of consent by a preponderance of the evidence, considering the totality of the

circumstances. *Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1973).

Factors include "the age, intelligence, and education of the individual;

whether the individual understands the right to refuse to consent; whether

the individual understands his or her constitutional rights; the length and

nature of detention; and the use of coercive or punishing conduct by the

police." *United States v. Blomquist*, 976 F.3d 755, 759 (6th Cir. 2020)

(internal quotation marks omitted).

Mr. Patterson was 22 years old at the time of the incident and had

prior experience with the criminal justice system. He had attended two

years of college, studying business management and exercise science.

These factors suggest Mr. Patterson had the intelligence and education to

freely give or withhold his consent.

The facts in this case also indicate that Mr. Patterson likely

understood his legal right to refuse consent to the search. Patterson

displayed some knowledge about the law when he told the officers that a

person over twenty-one could legally possess small amounts of marijuana

in a vehicle, though they could not smoke marijuana in a vehicle. Patterson

also appeared before this Court in his other case just four months earlier,

where the Court informed him of his constitutional rights before accepting

his guilty plea. While his other case did not involve a traffic stop, Patterson

demonstrate that he understood he had the right not to cooperate. In that

case, Patterson agreed to meet with federal agents, repeatedly acknowledged he was there voluntarily, provided incriminating statements, turned over his cell phone pursuant to a search warrant, but ultimately refused to provide his passcode when asked by the agents.

The officers detained Patterson inside his vehicle for about two minutes. During that time, they efficiently explained why they had stopped Patterson and waited for him to provide his title, registration, and proof of insurance. Including placing Patterson in handcuffs and performing a pat-down, the interaction continued for about four more minutes. During this time, officers gathered background information, discussed the circumstances that cause them concern and attempted to gain Patterson's consent to search the vehicle. Being handcuffed in and of itself does not prevent a person from giving voluntary consent. *See United States v. Choate*, 2000 WL 263348, at *5 (6th Cir. Mar. 2, 2000); *United States v. Burns*, 298 F.3d 523, 541 (6th Cir. 2002). The length and nature of the detention does not weigh against the voluntariness of Patterson's consent.

In attempting to obtain consent, officers must not act coercively. "Coercive behavior includes the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person . . . , or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *United States v. Wilson*, 806 F.

- 11 -

App'x 450, 453 (6th Cir. 2020) (internal quotation marks omitted). The bodycam footage confirms that Officers Rossow and Teolis never drew their weapons, made no threats, physically touched Mr. Patterson only as necessary to secure him and pat him down, did not raise their voices and engaged with Patterson in a serious but cordial manner.

Still, "consent may be involuntary not only when an officer uses force or the threat of force, but also when more subtle or implicit forms of coercion are present." *United States v. Worley*, 193 F.3d 380, 386, n.10 (6th Cir. 1999). In this case, Patterson evaded giving consent multiple times by not responding to the officers' requests and by changing the subject, but he did not clearly refuse consent. An officer may be persistent in asking for consent more than once, particularly where a suspect's initial response is ambiguous. *United States v. Jones*, 254 F.3d 692, 696 (8th Cir. 2001); *see also United States v. LaGrone*, 43 F.3d 332, 334 (7th Cir. 1998).

Officer Rossow did express his view that he already had enough evidence to conduct a search because he saw loose pills in the vehicle. Defendant argues that Rossow's statement of lawful authority to search was a declaration that defendant had no right to resist, so his consent was involuntary. *Bumper v. North Carolina*, 391 U.S. 543, 548-49 (1968) (government cannot meet its burden "by showing no more than acquiescence to a claim of lawful authority.") However, after making this

statement, Rossow and Patterson continued to discuss the pill, agreeing that it appeared to be Ibuprofen, in which case Rossow said that Patterson would have nothing to worry about if he only had an Ibuprofen and a gram of weed. It was only after Rossow returned to his request for consent that Patterson agreed. Here, as further discussed below, even if Patterson only acquiesced to the search in response to Rossow's claim of lawful authority, the totality of the circumstances made it reasonable for Rossow to believe he had probable cause to search the vehicle.

Based on the foregoing, the Court finds that the government has proven by a preponderance of the evidence that Patterson's consent to the search of his vehicle was voluntarily given.

III.   Probable Cause to Search

Under the automobile exception, officers may conduct a warrantless search of a vehicle based on probable cause. *United States v. Ross*, 456 U.S. 798, 823 (1982); *United States v. Pasquarille*, 20 F.3d 682, 690 (6th Cir. 1994). The standard is satisfied if, based on the totality of the circumstances, there is a fair probability that the vehicle contains evidence of a crime. *United States v. Padro*, 52 F.3d 120, 122–23 (6th Cir. 1995).

The government argues that the same circumstances providing reasonable suspicion, when taken together and considering the experience of the officers, amounted to a fair probability that searching the vehicle

would uncover evidence of a crime. First, the officers witnessed Patterson move toward the back seat in an apparent effort to conceal something immediately after they turned on the emergency lights to pull him over. Using their flashlights, they saw a blanket stretched across the backseat bench, which raised a red flag both because it was the same area where Patterson had been seen reaching into and because it was summertime. Next, they were aware that Patterson lied about having marijuana in the vehicle, even though it might have been legal. In addition to seeing what Officer Teolis believed to be marijuana, Officer Rossow saw a loose pill in the vehicle, raising his suspicion that there could be contraband in the car. Patterson also demonstrated a nervous demeanor, was fidgety, and gave evasive responses to the officers' questioning. Finally, in Officer Rossow's experience, his suspicion was raised by the fact that Patterson was speeding at 2:00 in the morning.

Defendant generally questioned Officer Rossow's experience as he was under evaluation at the time of the traffic stop. He also points out that nervousness during a traffic stop is an unreliable indicator because many people are nervous when they are pulled over by the police. Furthermore, the officers did not smell marijuana coming from Patterson's person or the vehicle. While any one factor may have an innocent justification, the totality

of the evidence supports Officer Rossow's conclusion that there was

probable cause that a search of the vehicle would reveal contraband.

<u>CONCLUSION</u>

IT IS HEREBY ORDERED that defendant Patterson's motion to

suppress evidence (ECF No. 23) is DENIED.

It is so ordered.

Dated:  June 14, 2022

<div style="margin-left: 40%;">

<u>s/George Caram Steeh      </u>
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

</div>

<div style="text-align: center; border: 1px solid black; width: 50%; margin: auto;">

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
June 14, 2022, by electronic and/or ordinary mail.

<u>s/Brianna Sauve</u>
Deputy Clerk

</div>